**BENDAU & BENDAU PLLC**
Clifford P. Bendau, II (030204)
Christopher J. Bendau (032981)
P.O. Box 97066
Phoenix, Arizona 85060
Telephone: (480) 382-5176
Facsimile: (480) 304-3805
Email: cliffordbendau@bendaulaw.com
         chris@bendaulaw.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| **Tobias Hetland**, individually, and on behalf of all others similarly situated, | No. |
| Plaintiff, | **COLLECTIVE AND CLASS ACTION COMPLAINT** |
| vs. | |
| **Patrick Hirsch d/b/a Outlaw Roadside Service**, and **Patrick Hirsch and Jane Doe Hirsch**, a Married Couple, | |
| Defendants. | |

Plaintiff, Tobias Hetland ("Plaintiffs"), sues the Defendants, Patrick Hirsch d/b/a Outlaw Roadside Service and Patrick Hirsch and Jane Doe Hirsch, a married couple, (collectively "Defendants") and allege as follows:

**PRELIMINARY STATEMENT**

1.      This is an action for unpaid minimum and overtime wages, liquidated damages, attorneys' fees, costs, and interest under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq. and the Arizona Minimum Wage Act ("AMWA"), Arizona Revised Statutes

-1-

("ARS") § 23-363 for Defendants' failure to pay Plaintiff all earned minimum and overtime wages.

2.  The FLSA was enacted "to protect all covered workers from substandard wages and oppressive working hours." Barrentine v. Ark Best Freight Sys. Inc., 450 U.S. 728, 739 (1981).  Under the FLSA, employers must pay all non-exempt employees a minimum wage of pay for all time spent working during their regular 40-hour workweeks.  See 29 U.S.C. § 206(a).  Under the FLSA, employers must pay all non-exempt employees one and one-half their regular rate of pay for all hours worked in excess of 40 hours in a workweek.  See 29 U.S.C § 207.

3.  ARS § 23-363 et seq. establishes the law regarding minimum wage within the State of Arizona.

4.  Plaintiff brings this action on behalf of himself and all similarly-situated current and former employees of Defendants who were roadside assistance technicians classified by Defendants as independent contractors.

5.  Plaintiff, individually, and on behalf of all others similarly-situated, brings this action against Defendants for their unlawful failure to pay minimum wage and overtime in violation of the Fair Labor Standards Act, 29 U.S.C. § 201-219 (the "FLSA").

6.  Plaintiff, individually, and on behalf of all others similarly-situated, brings this action against Defendants for their unlawful failure to pay minimum wage due and owing Plaintiff and others similarly-situated in violation of ARS § 23-363.

7.  Plaintiff brings a collective action under the FLSA to recover the unpaid minimum wages and overtime owed to him individually and on behalf of all other similarly-situated employees, current and former, of Defendants.  Members of the Collective Action are referred to as the "Collective Members."

8.      Additionally, Defendants' failure to compensate Plaintiff and all other similarly-situated employees at a rate equal to Arizona's required minimum wage rates violates ARS § 23-363.  Plaintiff, therefore, bringss a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure to recover unpaid minimum wages and other damages owed under Arizona minimum wage laws.  Members of the Arizona Rule 23 Class Action are referred to as the "Class Action Members."

9.      The Collective Members are all current and former employees who worked as roadside assistance technicians for Defendants and were classified as independent contractors at any time starting three years before this Complaint was filed, up to the present.

10.     The Class Action Members are all current and former employees who worked as roadside assistance technicians for Defendants in the State of Arizona and were classified as independent contractors at any time starting three years before this Complaint was filed, up to the present.

11.     Defendants own and operate a roadside assistance company that provides tire changing, jump starts, fuel delivery, and lockout services.

12.     At all relevant times, Defendants have operated pursuant to a policy and practice of intentionally misclassifying Plaintiff and all other similarly-situated employees as independent contractors.

13.     At all relevant times, pursuant to this misclassification, Defendants have willfully refused to pay a minimum wage; willfully refuse to pay overtime; and willfully reduced employee wages through unlawful deductions.

14.     In willfully refusing to pay a minimum wage; willfully refusing to pay overtime; and willfully reducing employee wages through unlawful deductions, Defendants have violated

the minimum wage provisions of 29 U.S.C. § 206 and the overtime provisions of 29 U.S.C. § 207.

15.     In willfully refusing to pay a minimum wage, Defendants have violated the minimum wage provisions of ARS § 23-363.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 201, *et seq*. because this civil action arises under the Constitution and law of the United States.  This Court also has subject matter jurisdiction pursuant 28 U.S.C. § 1367 because the state law claims asserted herein are so related to claims in this action over which this Court has subject matter jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

17.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(ii) because acts giving rise to the claims of Plaintiffs occurred within the District of Arizona, and Defendants regularly conduct business in and have engaged in the wrongful conduct alleged herein – and, thus, are subject to personal jurisdiction in – this judicial district.

## PARTIES

18.     At all material times, Plaintiff is an individual residing in Maricopa County, Arizona, and is a former employee of Defendants.

19.     At all material times, Defendant Patrick Hirsch d/b/a Outlaw Roadside Service is an individual or entity licensed to transact business in the State of Arizona.  At all material times, Defendant Patrick Hirsch d/b/a Outlaw Roadside Service does business, has offices, and/or maintains agents for the transaction of its customary business in Maricopa County, Arizona.

20.     At all material times, Defendant Patrick Hirsch d/b/a Outlaw Roadside Service does business as "Outlaw Roadside Service."

21.     At all relevant times, Defendant Patrick Hirsch d/b/a Outlaw Roadside Service was an employer under the FLSA.  The FLSA defines "employer" as any person who acts directly or indirectly in the interest of an employer in relation to an employee.  At all relevant times, Defendant Patrick Hirsch d/b/a Outlaw Roadside Service had the authority to hire and fire employees, supervised and controlled work schedules or the conditions of employment, determined the rate and method of payment, and maintained employment records in connection with Plaintiffs' employment with Defendants.  As a person who acted in the interest of Defendants in relation to the company's employees, Defendant Patrick Hirsch d/b/a Outlaw Roadside Service is subject to liability under the FLSA.

22.     Defendants Patrick Hirsch and Jane Doe Hirsch are, upon information and belief, husband and wife.  They have caused events to take place giving rise to the claims in this Complaint as to which their marital community is fully liable.  Patrick Hirsch and Jane Doe Hirsch are owners of Outlaw Roadside Service and were at all relevant times Plaintiff's employers as defined by the FLSA, 29 U.S.C. § 203(d).

23.     Under the FLSA, Defendants Patrick Hirsch and Jane Doe Hirsch are employers.  The FLSA defines "employer" as any person who acts directly or indirectly in the interest of an employer in relation to an employee.  At all relevant times, Defendants Patrick Hirsch and Jane Doe Hirsch had the authority to hire and fire employees, supervised and controlled work schedules or the conditions of employment, determined the rate and method of payment, and maintained employment records in connection with Plaintiff's employment with Defendants.  As persons who acted in the

-5-

interest of Defendants in relation to the company's employees, Defendants Patrick Hirsch and Jane Doe Hirsch Patrick Hirsch and Jane Doe Hirsch are subject to individual liability under the FLSA.

24.    At all material times, Defendants Patrick Hirsch d/b/a Outlaw Roadside Service and Patrick Hirsch and Jane Doe Hirsch are Plaintiff's "employer" as defined by the FLSA, 29 U.S.C. § 201, *et seq*.

25.    At all material times, Defendants Patrick Hirsch d/b/a Outlaw Roadside Service and Patrick Hirsch and Jane Doe Hirsch are Plaintiff's "employer" as defined by the AMWA.

26.    Defendants individually and/or through an enterprise or agent, directed and exercised control over Plaintiffs' work and wages at all relevant times.

27.    At all material times, Defendants have operated as a "single enterprise" within the meaning of Section 203(r)(1) of the FLSA. 29 U.S.C. § 203(r)(1). That is, Defendants perform related activities through unified operation and common control for a common business purpose; namely, the operation of a roadside assistance company operating under the name "Outlaw Roadside Service."

28.    At all material times: (1) Defendants were not completely disassociated with respect to the employment of Plaintiff; and (2) Defendants were under common control.  In any event, at all relevant times, all Defendants were joint employers under the FLSA.

29.    Defendants are engaged in related activities, *i.e.* all activities which are necessary to the operation and maintenance of the aforementioned restaurants.

30.    Defendants constitute a unified operation because they have organized the performance of their related activities so that they are an organized business system, which is an economic unit directed to the accomplishment of a common business purpose.

31.     Plaintiff, in his work for Defendants, was employed by an enterprise engaged in commerce that had annual gross sales of at least $500,000.

32.     At all relevant times, Plaintiff, in his work for Defendants, was engaged in commerce or the production of goods for commerce.

33.     At all relevant times, Plaintiff, in his work for Defendants, was engaged in interstate commerce.

34.     Plaintiff, in their his for Defendants, regularly handled goods produced or transported in interstate commerce.

### NATURE OF THE CLAIM

35.     Defendants do business as Outlaw Roadside Service and provide roadside assistance services to customers.  These services include tire changes, jump starts, fuel delivery, and lockout services.

36.     Plaintiff was hired by Defendants and worked for Defendants as a roadside assistance technician from approximately April 2020 through approximately February 2021.

37.     At all relevant times, in his work for Defendants, Plaintiff worked as a roadside assistance technician, performing roadside assistance work-related manual labor, such as changing tires, jump starting cars, unlocking car doors, and delivering fuel.

38.     Defendants, in their sole discretion, agreed to compensate Plaintiff at a certain commission percentage per job performed within his standard geographic coverage area. Plaintiff was compensated by Defendants in this manner, regardless of how many hours he worked in a given workweek.

39.     Plaintiff, in his work for Defendants, was required to be "on call" seven days per week, and 24 hours per day.

40.     Rather than classify Plaintiff as an employee, Defendants classified him as an independent contractor.

41.     On information and belief, Defendants serve at least three markets across the United States including, but not limited to, locations in Arizona, Illinois, and Texas.

42.     As a matter of common policy and practice, Defendants misclassify all of their roadside assistance technicians as independent contractors.

43.     Consistent with this common policy and practice, Plaintiff and others similarly situated individuals have been intentionally misclassified by Defendants as independent contractors.

44.     As a result of Defendants' common misclassification policy, Defendants have not paid a minimum wage or overtime pay to Plaintiff and others similarly situated.

45.     Defendants required Plaintiff and others similarly situated individuals to be on-call 24 hours per day, seven days per week.

46.     In addition to "on call" time, Plaintiff and others similarly situated routinely worked in excess of 70 hours per week.

47.     The FLSA applied to Plaintiff and all individuals similarly situated at all times during which they worked for Defendants.  No exceptions or exemptions to the FLSA apply to Plaintiff and those similarly situated.

48.     Upon information and belief, Defendants employed hundreds of roadside assistance technicians throughout the relevant time period without paying a minimum wage or overtime pay, while subjecting them to improper and unlawful pay deductions, and while denying them the rights and benefits due an employee.

49.     At all relevant times, Defendants directly or indirectly exercised significant control over the wages, hours, and working conditions of Plaintiff and similarly situated individuals.

50.     At all relevant times, the employment terms, conditions, and policies that applied to Plaintiff were the same as those applied to other putative Collective Members and Class Members who also worked as roadside assistance technicians for Defendants.

51.     Plaintiffs and the putative Collective Members and Class Members incurred financial loss, injury, and damage as a result of Defendants' business practice of misclassifying them as independent contractors and failing to pay them a minimum wage and overtime pay.

52.     Because Defendants failed to pay their employees proper wages, the putative Collective Members' and Class Members' income consisted solely of the commissions earned.

53.     Defendants' misclassification of Plaintiff and other putative Collective Members and Class Members as independent contractors was specifically intended to enhance Defendants' profit margins at the expense of the putative Collective Members and Class Members as follows: (1) willfully failing to pay roadside assistance technicians the minimum wage in violation of the FLSA and ARS § 23-363; (2) willfully suffering and permitting Plaintiffs and the putative Collective Members and Class Members to work in excess of 40 hours in a given workweek without paying overtime compensation at a rate of one and one-half times their regular rates; and (3) adopting and implementing employment policies that violate the FLSA and ARS § 23-363.

54.     Defendants' misclassification of Plaintiff and those similarly situated was willful.

55.     Defendants knew or should have known that it was improper to classify Plaintiff and the putative Collective Members and Class Members as independent contractors.

56.     Workers in the putative Collective and Class cannot "elect" to be treated as employees or independent contractors.  Nor can workers in the putative Collective or Class agree to be paid less than the applicable minimum wage.  Despite this, Defendants unfairly, unlawfully, fraudulently, and unconscionably attempted to coerce workers in the putative Collective and Class to waive their statutory rights and elect to be treated as independent contractors.

57.     Any contract which attempts to have workers in the putative Collective and Class waive, limit, or abridge their statutory rights to be treated as an employee under the FLSA or other applicable wage and hour laws is void, unenforceable, unconscionable, and contrary to public policy.

58.     The determining factor as to whether Plaintiff and those similarly situated are employees or independent contractors under the FLSA is not the workers' elections, subjective intent, or any contract.  Rather, the test for determining whether an individual is an "employee" under the FLSA is the economic reality test.  *See Rutherford Food Corp. v. McComb*, 331 U.S. 722, 727 (1947).  Under the economic reality test, employee status turns on whether the individual is, as a matter of economic reality, in business for herself and truly independent, or, rather, is economically dependent upon finding employment in others.

59.     Under the applicable test, court use the following factors to determine economic dependence and employment status: (1) the degree of control exercised by the alleged employer; (2) the relative investments of the alleged employer and employee; (3) the degree to which the employee's opportunity for profit and loss is determine by the employer; (4) the skill and initiative required in performing the job; (5) the permanency of the relationship; and (6) the degree to which the alleged employee's tasks are integral to the employer's business.

60.     The totality of circumstances surrounding the employment relationship between Defendants and the putative Collective and Class establishes economic dependence by the putative Collective and Class on Defendants and employee status.  Here, Plaintiff and all individuals similarly situated are not in business for themselves and truly independent, but rather are economically dependent upon finding employment in Defendants.  The putative Collective and Class are not engaged in occupations or businesses distinct from that of Defendants.  To the contrary, the putative Collective and Class are the basis for Defendants' business.  Defendants obtain the customers who seek out roadside assistance, and Defendants provide the workers who conduct the roadside assistance on behalf of Defendants.  Defendants retain pervasive control over the business operation as a whole, and putative Collective and Class.

**Degree of Control Exercised by Defendants**

61.     Plaintiff and the other members of the putative Class do not exert control over any meaningful part of Defendants' business operation and do not stand as a separate economic entity from Defendants.  Defendants exercise control over all aspects of the working relationship with Plaintiff and the other Class members.

62.     Plaintiff and Class members' economic status is inextricably linked to conditions over which Defendants have complete control, including without limitation advertising and promotion, business and financial relationships with customers, business and financial relationship with insurers, and customer volume.

63.     Defendants exercise the following significant control over the work conditions of Plaintiff and others similarly situated:

        a.     Defendants require Plaintiff and putative Collective and Classes to be on call twenty-four hours per day, seven days per week;

b.    As a result of "on call" time, Defendants require Plaintiff and putative Collective and Class to routinely work in excess of 70 hours per week;

c.    Defendants pay Plaintiff and the putative Collective and Class only the on a percentage commission basis without regard to the number of hours they work;

d.    Defendants direct Plaintiff and the putative Collective and Classes with respect to which service jobs/runs to perform and what types of service to provide;

e.    Defendants require Plaintiff and the putative Collective and Class to wear Defendants' uniform;

f.    Defendants require Plaintiff and the putative Collective and Class to maintain signage on their vehicles that bear Defendants' name and logo;

g.    Defendants require Plaintiff and the putative Collective and Class to use forms and invoices Defendants provided;

h.    Defendants determined the tools and equipment Plaintiff and the putative Collective and Class have to use; and

i.    Defendants require Plaintiff and the putative Collective and Class to deliver to Defendants all invoices and customer service reports within the same day of each service job/run;

**Facts Establishing No Skill or Initiative of a Person in Business for Themselves**

64.    Plaintiff, like all members of the putative Collective and Class, do not exercise the skill and initiative of a person in business for oneself;

65.     Plaintiff and the putative Collective and Class are not required to have any specialized or unusual skills to perform their jobs.  The sills used in performing roadside assistance are commensurate with those exercised by ordinary people.

66.     Plaintiff, like all members of the putative Collective and Class, does not have the opportunity to exercise the business skills and initiative necessary to elevate their status to that of an independent contractor: they own no enterprise, nor do they maintain a separate business structure or facility.

67.     Plaintiff and the putative Collective and Class have no control over customers, nor do they actively participate in any efforts to increase Defendants' customer base or profit, or to improve business in any capacity.

68.     Defendants do not permit Plaintiff and the putative Collective and Classes to hire or subcontract other qualified individuals to provide additional roadside assistance to customers, thereby increasing their revenue, as an independent contractor in business for himself would have the authority to do.

**Facts Establishing Relative Investment**

69.     Plaintiff's and the putative Collective's and Class' relative investment is minor when compared to the investment made by Defendants.

70.     Plaintiff and the putative Collective and Class make no financial investment in Defendants' facilities, advertising, maintenance, staffing, and contractual relationships.  All capital investment and risk belong to Defendants.

71.     Plaintiff's and the putative Collective's and Class' investment is limited to fuel and amounts paid to Defendants for signage, uniforms, and tools.  Absent Defendants'

investment and provision of the business, the roadside assistance technicians would not earn anything.

**Facts Establishing Opportunity for Profit and Loss**

72.	Defendants manage all aspects of the business operation, including without limitation attracting investors, establishing business and customer relationships, maintaining the premises, establishing the hours of operation, coordinating advertising, and hiring and controlling of staff.  Defendants provide all necessary capital to open and operate the business.

73.	Neither Plaintiff nor the putative Collective and Class have responsibility for any aspect of Defendants' ongoing business risk.

**Facts Establishing Permanency**

74.	Plaintiff worked for Defendants as a roadside assistance technician from approximately April 2020 through approximately February 2021 in Defendants' Arizona coverage areas.

**Fact Establishing Members of the Putative Collective and Classes Are an Integral Part of Defendants' Business**

75.	Plaintiff and the putative Collective and Class are critical to Defendants' success. Defendants' operation in wholly dependent on the roadside assistance services that Plaintiff and the putative Collective and Class provide for customers.

76.	The primary "product" or "good" Defendants are in business to sell consists of roadside assistance services provided by members of the putative Collective and Class.

77.	Members of the putative Collective and Class, like Plaintiff, are economically dependent on Defendants and subject to significant control by Defendants.

**<u>Facts Establishing that Defendants' Acts Were Willful</u>**

78.     All actions and agreements by Defendants described herein were willful and intentional, and they were not the result of mistake or inadvertence.

79.     Defendants were aware that the FLSA applies to their business at all relevant times and that, under the economic realities test applicable to determining employment status under those laws, Plaintiff and Members of the putative Collective and Class were misclassified as independent contractors.

80.     Roadside assistance technicians working under conditions similar to those employed with Defendants have been determined to be employees–not independent contractors– in other FLSA cases.

81.     Defendants themselves have been party Defendants in previous litigation in which they were sued by roadside assistance technicians under the FLSA asserting substantially similar allegations to those contained herein.

82.     Despite this notice of their violations, and in an effort to enhance Defendants' profits, Defendants continued to intentionally misclassify roadside assistance technicians like Plaintiff and similarly situated individuals, failed to pay them minimum wage in violation of the FLSA, knowingly suffered or permitted them to work in excess of 40 hours during a workweek without paying them overtime compensation at a rate of one and one-half times their regular rate, and improperly reduced their pay through unlawful deductions.  Such conduct was intentional, unlawful, fraudulent, deceptive, unfair, and contrary to public policy.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

**INJURY AND DAMAGE**

83.     Plaintiff and all Members of the putative Collective and Class suffered harm, injury, and damages, including financial loss, as a result of Defendants' conduct complained of herein.

84.     Plaintiff and all Members of the putative Collective and Class were entitled to a minimum wage and overtime pay for their work performed for Defendants.  Further, Defendants were not allowed to make improper and unlawful deductions from Plaintiff's and the Members' of the putative Collective and Class pay.  By failing to pay Plaintiff and the Members of the putative Collective and Class a minimum wage and overtime pay and interfering with their right to retain all of their earnings, Defendants injured Plaintiff and the Members of the putative Collective and Class and caused them financial loss, harm, injury, and damage.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

85.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

86.     Plaintiff brings the FLSA claims in this action as a collective action under 29 U.S.C. § 216(b).

87.     Plaintiff asserts those claims on behalf of himself, and on behalf of all similarly situated roadside assistance technicians of Defendants, who were not paid all minimum wage and overtime compensation required by the FLSA during the relevant time period as a result of Defendants' compensation policies and practices.

88.     Plaintiff seeks to notify the following individuals of their rights under 29 U.S.C. § 216(b) to join this action by filing in this Court written notice of their consent to join this action:

**All roadside assistance technicians (or individuals with other similar job duties or titles) who worked for Defendants and were misclassified as independent contractors at any time during the past three years.**

89.     The FLSA provides for a three-year statute of limitations for causes of action arising out of a willful violation of the Act. 29 U.S.C. § 255.  As alleged above, Plaintiff and similarly situated roadside assistance technicians' claims arise out of Defendants' willful violations of the FLSA.  Accordingly, the Court should require appropriate notice of this action be given to all tipped employees employed by Defendants within three years from the filing of this Complaint.

90.     Upon information and belief, Defendants have employed more than one hundred (100) roadside assistance technicians during the period relevant to this action.

91.     The identities of these individuals, as a group, are known only to Defendants. Because the numerous members of this collective action are unknown to Plaintiffs, joinder of each member is not practicable.

92.     Because these similarly situated tipped employees are readily identifiable by Defendants and may be located through their records, they may be readily notified of this action and allowed to opt into it pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their FLSA claims.

93.     Collective adjudication is appropriate in this case because the individuals whom Plaintiff wishes to notify of this action have been employed in positions similar to Plaintiff; have performed work similar to Plaintiff; and have been subject to compensation practices similar to those to which Plaintiff has been subjected, including unlawful misclassification as independent contractors and failure to pay the applicable minimum wage and overtime rates as required by the FLSA.

**CLASS ACTION ALLEGATIONS**

94.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

95.    Plaintiff brings his Arizona wage claims as a Rule 23 class action on behalf of the following Arizona Class Action Members:

> **All roadside assistance technicians (or individuals with other similar job duties or titles) who worked for Defendants in Arizona and were misclassified as independent contractors at any time during the past three years.**

96.    <u>Numerosity</u>.  The number of Arizona Class Action Members is believed to be over one hundred.  This volume makes bringing the claims of each individual Arizona Class Action Member before this Court impracticable.  Likewise, joining each individual Arizona Class Action Member as a plaintiff in this action is impracticable.  Furthermore, the identity of the Arizonba Class Action Members will be determined from Defendants' records, as will the compensation paid to each of them.  As such, a class action is a reasonable and practical means of resolving these claims.  To require individual actions would prejudice the Arizona Class Action Members and Defendants.

97.    <u>Typicality</u>.  Plaintiff's Arizona claims are typical of the Arizona Class Action Members because like the Arizona Class Action Members, Plaintiff was subject to Defendants' uniform policies and practices and was compensated in the same manner as the other Arizona Class Action Members.  Defendants regularly did not pay minimum wage to Plaintiff and the Arizona Class Members.  Defendants misclassified Plaintiff and the Arizona Class Action Members as independent contractors.  This was commonly, though not exclusively, done in order to prevent Plaintiff and the Arizona Class Action Members from being paid a minimum wage for

-18-

all hours worked.  As a result, Defendants failed to pay Plaintiff and the Arizona Class Action Members both minimum wage and overtime for all hours worked.

98.     As a result of such policy and practice by Defendants, Defendants violated the minimum provisions of ARS § 23-363.

99.     <u>Adequacy</u>.  Plaintiff is a representative party who will fairly and adequately protect the interests of the Arizona Class Action Members because it is in his interest to effectively prosecute the claims in this Complaint in order to obtain the unpaid wages and penalties required under Arizona law.  Plaintiff has retained attorneys who are competent in both class actions and wage and hour litigation.  Plaintiff does not have any interest that may be contrary to or in conflict with the claims of the Arizona Class Action Members she seeks to represent.

100.     <u>Commonality</u>. Common issues of fact and law predominate over any individual questions in this matter.  The common issues of fact include, but are not limited to:

a.     The number of hours worked by Plaintiff and the Arizona Class Action Members;

b.     The amounts paid to Plaintiff and the Arizona Class Action Members;

c.     The degree of control Defendants exerted over Plaintiff and the Arizona Class Action Members;

d.     The relative investments of Defendants and Plaintiff and the Arizona Class Action Members;

e.     The degree to which Plaintiff's and the Arizona Class Action Members' opportunity for profit and loss was determined by Defendants;

f.     The skill and initiative required in performing the job;

g.    The permanency of the relationship; and

h.    The degree to which Plaintiff's and the Arizona Class Action Members' tasks are integral to Defendants' business.

101.    Common issues of law include, but are not limited to:

a.    Whether Defendants paid all minimum wages due and owing to Plaintiff and the Arizona Class Action Members;

b.    Whether Defendants improperly misclassified Plaintiff and the Arizona Class Action Members as independent contractors;

c.    Whether Plaintiff and the Arizona Class Action Members are entitled to compensatory damages;

d.    The proper measure of damages sustained by Plaintiff and the Arizona Class Action Members; and

e.    Whether Defendants' actions were "willful."

102.    <u>Superiority</u>.  A class action is superior to other available means for the fair and efficient adjudication of this lawsuit.  Even in the event any of the Arizona Class Action Members could afford to pursue individual litigation against companies the size of Defendants, doing so would unduly burden the system.  Individual litigation would magnify the delay and expense to all parties and burden the court system with duplicative lawsuits.  Prosecution of separate actions by individual Arizona Class Action Members would create the risk of inconsistent or varying judicial results and establish incompatible standards of conduct for Defendants.

103.    A class action, by contrast, presents far fewer management difficulties and affords the benefits of uniform adjudication of the claims, financial economy for the parties, and

comprehensive supervision by a single court and Judge.  By concentrating this litigation in one forum, judicial economy and parity among the claims of individual Arizona Class Members are promoted.  Additionally, class treatment in this matter will provide for judicial consistency. The identities of the Arizona Class Action Members are readily identifiable from Defendants' records.

104.    This type of case is well-suited for class action treatment because: (1) Defendants' practices, policies, and/or procedures were uniform; (2) the burden is on each Defendant to prove it properly compensated its employees; and (3) the burden is on each Defendant to accurately record hours worked by employees.

105.    Ultimately, a class action is a superior forum to resolve the Arizona state law claims set forth in this Complaint because of the common nucleus of operative facts centered on the continued failure of Defendants to pay Plaintiff and the Arizona Class Action Members according to applicable Arizona laws.

106.    <u>Nature of Notice to be Proposed</u>.  As to the Rule 23 Arizona Class Action Members, it is contemplated that notice would be issued giving putative class members an opportunity to opt out of the class if they so desire, *i.e.* an "opt-out notice."  Notice of the pendency and resolution of the action can be provided to the Arizona Class Action Members by mail, electronic mail, print, broadcast, internet, and/or multimedia publication.

**COUNT ONE: FAIR LABOR STANDARDS ACT<br>FAILURE TO PAY MINIMUM WAGE**<br>**(Against All Defendants)**

107.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

-21-

108.    Defendants willfully failed or refused to pay Plaintiff and the Collective Members minimum wage for all hours worked in a given workweek throughout the duration of their employment.

109.    As a result, Defendants failed to compensate Plaintiff and the Collective Members at least the applicable minimum wage rate for all hours worked.

110.    Defendants' practice of willfully failing or refusing to pay Plaintiff and the Collective Members at the required minimum wage rate violates the FLSA, 29 U.S.C. § 206(a).

111.    Defendants knew that – or acted with reckless disregard as to whether – their failure to pay Plaintiff and the Collective Members the proper minimum wage rate would violate federal and state law, and Defendants were aware of the FLSA minimum wage requirements during Plaintiff and the Collective Members employment. As such, Defendants' conduct constitutes a willful violation of the FLSA.

112.    Plaintiff and the Collective Members are therefore entitled to compensation for the unpaid minimum wages at an hourly rate, to be proven at trial, plus an additional equal amount as liquidated damages, together with interest, reasonable attorney's fees, and costs.

**WHEREFORE**, Plaintiff, Tobias Hetland, individually, and on behalf of all roadside assistance technicians similarly situated, respectfully request that the Court grant relief in Plaintiff's favor, and against Defendants for compensation for unpaid overtime wages, plus an additional equal amount as liquidated damages, prejudgment and post-judgment interest, reasonable attorneys' fees, costs, and disbursements of this action, and any additional relief this Court deems just and proper.

## COUNT TWO: FAIR LABOR STANDARDS ACT
## FAILURE TO PAY OVERTIME
**(Against All Defendants)**

113.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

114.    Defendants willfully failed or refused to pay Plaintiff and the Collective Members the applicable overtime wage for all hours worked in excess of 40 in a given workweek throughout the duration of their employment.

115.    As a result, Defendants failed to compensate Plaintiff and the Collective Members at least the applicable overtime wage rate for all hours worked in excess of 40 in a given workweek.

116.    Defendants' practice of willfully failing or refusing to pay Plaintiff and the Collective Members at the required overtime wage rate violates the FLSA, 29 U.S.C. § 207(a).

117.    Defendants knew that – or acted with reckless disregard as to whether – their failure to pay Plaintiff and the Collective Members the proper overtime rate would violate federal and state law, and Defendants were aware of the FLSA overtime requirements during Plaintiff and the Collective Members employment. As such, Defendants' conduct constitutes a willful violation of the FLSA.

118.    Plaintiff and the Collective Members are therefore entitled to compensation for the unpaid overtime wages at an hourly rate, to be proven at trial, plus an additional equal amount as liquidated damages, together with interest, reasonable attorney's fees, and costs.

**WHEREFORE**, Plaintiff, Tobias Hetland, individually, and on behalf of all roadside assistance technicians similarly situated, respectfully request that the Court grant relief in Plaintiff's favor, and against Defendants for compensation for unpaid overtime wages, plus an

additional equal amount as liquidated damages, prejudgment and post-judgment interest, reasonable attorneys' fees, costs, and disbursements of this action, and any additional relief this Court deems just and proper.

**COUNT THREE: ARIZONA REVISED STAUTES § 23-363, et seq.**
**FAILURE TO PAY MINIMUM WAGE**
**(Against All Defendants)**

119.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

120.     Defendants willfully failed or refused to pay Plaintiff and the Arizona Class Action Members minimum wage for all hours worked in a given workweek throughout the duration of their employment.

121.     As a result, Defendants failed to compensate Plaintiff and the Arizona Class Action Members at least the applicable minimum wage rate for all hours worked.

122.     Defendants' practice of willfully failing or refusing to pay Plaintiff and the Arizona Class Action Members at the required minimum wage rate violates the minimum wage provisions of ARS § 23-363.

123.     Defendants knew that – or acted with reckless disregard as to whether – their failure to pay Plaintiff and the Arizona Class Action Members the proper minimum wage rate would violate federal and state law, and Defendants were aware of the FLSA and Arizona minimum wage requirements during Plaintiff's and the Arizona Class Action Members' employment. As such, Defendants' conduct constitutes a willful violation of the FLSA.

124.     Plaintiff and the Arizona Class Action Members are therefore entitled to compensation for the unpaid minimum wages at an hourly rate, to be proven at trial, plus an

additional equal amount as liquidated damages, together with interest, reasonable attorney's fees, and costs.

**WHEREFORE**, Plaintiff, Tobias Hetland, individually, and on behalf of all roadside assistance technicians similarly situated, respectfully request that the Court grant relief in Plaintiff's favor, and against Defendants for compensation for unpaid overtime wages, plus an additional equal amount as liquidated damages, prejudgment and post-judgment interest, reasonable attorneys' fees, costs, and disbursements of this action, and any additional relief this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

RESPECTFULLY SUBMITTED this 22nd day of March, 2021.

BENDAU & BENDAU PLLC

By: /s/ *Clifford P. Bendau II*
Clifford P. Bendau, II
Christopher J. Bendau
*Attorneys for Plaintiff*