WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tobias Hetland, | No. CV-21-00487-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| Patrick Hirsch, et al., | |
| Defendants. | |

Plaintiff Tobias Hetland moves for default judgment against Defendants Outlaw Roadside Service and Patrick Hirsch and Jane Doe Hirsch (collectively, "the Hirsches"), pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. (Doc. 11.) The Hirsches have not appeared or filed any response. For the reasons discussed below, the motion for default judgment is granted and Hetland is awarded $32,209.80 plus reasonable attorneys' fees and costs and post-judgment interest.[1]

**I.   BACKGROUND[2]**

The Hirsches own and operate Outlaw Roadside Service, "a roadside assistance company which provides common services such as tire changing, jump starts, fuel deliveries, and lockout services." (Doc. 1 at ¶ 11.) Outlaw Roadside Service hired technicians to aid customers requiring roadside assistance across Arizona, Illinois, and

---

[1] Turner Smith, a second-year law student at the Sandra Day O'Connor College of Law at Arizona State University, assisted in drafting this Order.
[2] "Upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *NewGen LLC v. Safe Cig LLC*, 840 F.3d 606, 617 (9th Cir. 2016) (quoting *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).

Texas. (*Id.* ¶¶ 36–38, 40, 48, 50.)

Hetland worked as a roadside assistance technician for Outlaw Roadside Service from April 2020 to February 2021. (*Id.* ¶ 36.) During that time, Hetland was required to be "on call" twenty-four hours a day, seven days a week. (*Id.* ¶ 39.) As a result, Hetland routinely worked more than 70 hours per week. (*Id.* ¶ 46.) He was compensated with "a certain commission percentage per job performed within his standard geographic coverage area . . . regardless of how many hours he worked in a given workweek." (*Id.* ¶ 39.)

In March 2021, Hetland filed a complaint seeking relief for unpaid minimum and overtime wages. (*Id.* ¶¶ 5, 6.) Hetland alleges that Outlaw Roadside Service willfully misclassified him as an independent contractor instead of an employee. (*Id.* ¶¶ 40, 54.) In fact, Hetland claims that the Hirsches "unfairly, fraudulently, and unconscionably attempted to coerce [him] to waive [his] statutory rights and elect to be treated as [an] independent contractor[]." (*Id.* ¶ 56.) The result, according to Hetland, is unpaid minimum and overtime wages owed to him. (*Id.* ¶ 44.)

The Hirsches, who stand in the place of Outlaw Roadside Service when assessing liability, were timely served with the summons and complaint.[3] (Docs. 5–7.) They have not filed an answer, a motion to dismiss, or any other response. Upon Hetland's application (Doc. 8), the Clerk of the Court entered default against the Hirsches. (Doc. 9). Hetland subsequently filed the pending motion for default judgment. (Doc. 11.) No response has been filed.

**II.    LEGAL STANDARD**

Once a default is entered, the district court has discretion to grant default judgment. *See* Fed. R. Civ. P. 55(b)(2); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980); *Brooke v. Sai Ashish Inc.*, No. 1:21C-cv-00967-AWI-SAB, 2021 WL 4804220, at *5 (E.D. Cal. Oct. 14, 2021) (explaining that default judgment "is a two-step process: an entry of default

---

[3] The Ninth Circuit Court of Appeals has held employers individually liable under the FLSA. *See e.g., Walsh v. Wellfleet Commc'ns*, No. 20-16385, 2021 WL 4796537, at *2 (9th Cir. Oct. 14, 2021). Likewise, the District of Arizona has held that employers may be individually liable under both the FLSA and the AMWA. *See e.g., Rosen v. Fasttrak Foods LLC*, No. CV-19-05292-PHX-DWL, 2021 WL 2981590, at *5 (D. Ariz. July 15, 2021).

- 2 -

judgment must be preceded by an entry of default"). The court may consider several factors when deciding to grant default, including

> (1) the possibility of prejudice to the plaintiff; (2) the merits of the claim; (3) the sufficiency of the complaint; (4) the sum of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring a decision on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986); *New Gen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 616 (9th Cir. 2016). As the party seeking default judgment, Hetland "bears the burden of demonstrating to the Court that the complaint is sufficient on its face and that the *Eitel* factors weigh in favor of granting default judgment." *Ronald Norris v. Shenzhen IVPS Tech. Co.*, No. CV-20-01212-PHX-DWL, 2021 WL 4844116, at *2 (D. Ariz. Oct. 18, 2021). Hetland also bears the burden of proving all damages. *Philip Morris USA, Inc. v. Castworld Prod., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003).

### III.   DISCUSSION

####    A.   Jurisdiction, Venue, and Service

"When entry of default is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *Tuli v. Republic of Iraq*, 172 F.3d 707, 712 (9th Cir. 1999). Hetland correctly asserts that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 29 U.S.C. § 201 *et seq*, and 28 U.S.C. § 1367. (Doc. 1 ¶ 16.) Hetland asserts claims arising under the Fair Labor Standards Act ("FLSA") and the Arizona Minimum Wage Act ("AMWA"). (*Id.* ¶¶ 5–6.) The district courts of the United States have subject matter jurisdiction over claims arising out of federal law, including the FLSA, under 28 U.S.C. § 1331. Hetland's state law claim under the AMWA forms "part of the same case or controversy under Article III of the United States Constitution" as his FLSA claim. 28 U.S.C. § 1367. (*Id.* ¶¶ 5, 16.) The Court has supplemental jurisdiction over Hetland's state law claim.

Hetland correctly argues that venue is proper pursuant to 28 U.S.C. § 1391(b)(ii)

because Hetland worked for Outlaw Roadside Service within the jurisdictional boundaries of this district. (*Id.* ¶ 17.) Hetland supported this assertion with a declaration. (Doc. 11-1 ¶ 2.) Therefore, "a substantial part of the events or omissions giving rise to the claim" occurred in this district. 28 U.S.C. § 1391(b)(ii). Hetland further asserts that personal jurisdiction is satisfied because the Hirsches "regularly conduct business in and have engaged in the wrongful conduct alleged herein." (Doc. 1 ¶ 17.) This is persuasive. Thus, venue is proper and jurisdiction requirements are satisfied.

Federal Rule of Civil Procedure 4(e) provides the means by which an individual may be served within a judicial district of the United States. It states that service is proper by "delivering a copy of the summons and of the complaint to the individual personally," or by "leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there." Fed. R. Civ. P. 4(e)(2)(A–B). Here, Jane Doe Hirsch was served in her Chicago, Illinois home where she resides with Patrick Hirsch. (Doc. 7.) She was hand delivered her Complaint and Summons by an individual over the age of eighteen and not a party to the action. (Doc. 7.) On the same occasion, she accepted the Complaint and Summons meant for Patrick Hirsch. (Doc. 6.) Accordingly, both Jane Doe Hirsch and Patrick Hirsch were properly served.

    **B.**    **Default Judgment**

        **1.**    **The first, fifth, sixth, and seventh *Eitel* factors**

In the current case, the Hirsches have not responded or participated in any litigation. Traditionally, this means the "first, fifth, sixth, and seventh [*Eitel*] factors are easily addressed." *Zekelman Indus. Inc. v. Marker*, No. CV-19-02109-PHX-DWL, 2020 WL 1495210, *3 (D. Ariz. 2020) (noting that the first, fifth, and sixth *Eitel* factors supported granting default judgment because a denial would prejudice the plaintiff, there was no dispute over material facts, and the default was not due to excusable neglect). The first factor weighs in favor of default judgment because denying Hetland's application will leave him "without other recourse for recovery." *PepsiCo, Inc. v. Cal. Sec. Cans.*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Next, the fifth factor is satisfied because the well-

pleaded facts in the Complaint are taken as true, meaning there is no "genuine dispute of material facts" that would preclude granting the motion. *Id.* Similarly, the sixth factor weighs in favor of default judgment. Because the Hirsches were properly served (Docs. 5–7), it is unlikely that their failure to answer was the result of excusable neglect. *See Twentieth Century Fox Film Corp. v. Streeter*, 438 F. Supp. 2d 1065, 1072 (D. Ariz. 2006) (arguing that there is likely no excusable neglect where the defendant was properly served with the complaint). Finally, although the seventh factor, which considers the policy favoring a decision on the merits, generally weighs against default judgment, the existence of Rule 55(b) "indicates that this preference, standing alone, is not dispositive." *PepsiCo*, 238 F. Supp. 2d at 1177. This factor alone is not sufficient to preclude the entry of default judgment in this case.

### 2.     The second and third *Eitel* factors

The second and third *Eitel* factors—the merits of the claim and the sufficiency of the complaint—are often "analyzed together and require courts to consider whether a plaintiff has stated a claim on which [he] may recover." *Vietnam Reform Party v. Viet Tan-Vietnam Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019). The Court addresses Hetland's claims under the FLSA and AMWA in turn.

#### a.     FLSA claims

Before turning to the merits of his claims under the FLSA and AMWA for unpaid minimum and overtime wages, the Court must analyze the status of Hetland as an employee within the meanings of both acts. The FLSA defines an "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). It defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).[4] The Ninth Circuit has traditionally employed a six factor "economic reality" test to distinguish between employees and independent contractors. *Real v. Driscoll Strawberry Assocs., Inc.*, 603 F.2d 748, 754 (9th Cir. 1979). No one factor in the

---

[4] Both the FLSA definitions of "employer" and "employee" include some limited exceptions. 29 U.S.C. § 203(d) and (e)(2–4). However, none apply to these facts. *Id.* As a result, a discussion of the exceptions is omitted.

- 5 -

test is dispositive. *Id.* Instead, the determination depends "upon the circumstances of the whole activity." *Rutherford Food Corp. v. McComb*, 3331 U.S. 722, 730 (1947).[5]

The factors relied upon by the Ninth Circuit in conducting the economic reality test are:

> (1) the degree of the alleged employer's right to control the manner in which the work is to be performed; (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; (3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; (4) whether the service rendered requires a special skill; (5) the degree of permanence of the working relationship; and (6) whether the service rendered is an integral part of the alleged employer's business.

*Real*, 603 F.2d at 754.

The first factor, degree of control, weighs in favor of Hetland's claim. The Hirsches exercised complete control over the manner in which Hetland performed his work as a roadside assistance technician. They required Hetland to be on call twenty-four hours a day, seven days a week and determined both where Hetland worked and what jobs he performed. (Doc. 1 ¶ 63.) They controlled what Hetland wore while on the job and the names and logos that Hetland's vehicle bore. (*Id.*) They determined what tools and equipment Hetland could use while on the job. (*Id.*) Hetland was required to use company-provided forms and invoices. (*Id.*) Finally, all forms and customer service reports had to be delivered to the Hirsches at the end of each service job. (*Id.*) These facts demonstrate complete control exercised by the Hirsches over Hetland's work.

The second factor contemplates the alleged employee's opportunity for profit and loss. It likewise weighs in Hetland's favor. The Hirsches directed all advertising, attracted investors, established business and customer relationships, and hired and coordinated the staff. (*Id.* ¶ 72.) They provided the capital necessary to open and operate the business. (*Id.*) In contrast, Hetland did not bear any of the business's financial risk. (*Id.* ¶ 73.) His financial success was dependent upon the Hirsches. (*Id.* ¶ 77.)

---

[5] This consideration of the "circumstances of the whole activity" does not concern itself with the subjective intent of the parties nor with any intent to contract around a designation as an employee. Evidence of such does not play a role in the analysis. *Real*, 603 F.2d at 754.

The third factor, the relative investments of the alleged employer and employee in the business, weighs only slightly in favor of Hetland. Though the original articulation of this factor considers the relative investment in equipment and staffing necessary for the alleged employee to complete their work, "it is appropriate to compare the worker's individual investment to the employer's investment in the overall operation." *Dyrhaug v. Tax Breaks Inc.*, No. CV-13-01309-PHX-BSB, 2015 WL 13567067, at *8 (D. Ariz. 2015) (quoting *Baker v. Flint Eng'g and Const. Co.*, 137 F.3d 1436, 1442 (10th Cir. 1998)). When considering the relative investments in the overall operation, the Hirsches' investments outweigh those of Hetland. (Doc. 1 ¶ 69.) Hetland made no financial investment in Outlaw Roadside Assistance's facilities, advertising, maintenance, staffing, and contractual relationships. (*Id.* ¶ 70.) On the other hand, Hetland's investment was not zero; significantly, he was responsible for paying for fuel, signage, his uniforms, and his tools. (*Id.* ¶ 71.) But he was not permitted to subcontract or hire help. (*Id.* ¶ 68.)

The fourth factor looks to the degree of skill necessary to perform the alleged employee's work. "A minimal level of skill weighs in favor of finding that an individual was an employee, rather than an independent contractor." *Dyrhaug*, No. CV-13-01309-PHX-BSB, 2015 WL 13567067, at *9. This factor weighs very slightly for Hetland. With only one exception, Hetland was not required to possess unique or specialized skills in the performance of his duties. (Doc. 1 ¶ 65.) Hetland performed tasks such as tire changes, jump starts, fuel deliveries, and lockout services. (*Id.* ¶ 11.) The lockout services do constitute a skill outside of the ordinary, but the majority of Hetland's responsibilities involve skill consistent with those exercised by ordinary individuals.

The fifth factor contemplates the permanence of the working relationship between the alleged employer and employee. It decisively weighs in favor of Hetland. Hetland worked for Outlaw Roadside Service for approximately eleven months. (*Id.* ¶ 74.) He regularly worked in excess of seventy hours a week. (*Id.* ¶ 63.) Such consistency and longevity are sufficient to demonstrate a permanent working relationship.

The sixth and final factor considers whether the alleged employee's rendered

services were an integral part of the alleged employer's business. It supports Hetland's position. The Hirsches' operation of Outlaw Roadside Assistance is entirely dependent on the services provided by Hetland and his fellow roadside assistance technicians. (*Id.* ¶ 75.) Without its roadside assistance technicians, Outlaw Roadside Assistance can provide no services to its customers. (*Id.* ¶ 76.) The above application of the six factors composing the Ninth Circuit's economic reality test demonstrates that Hetland was an employee of Outlaw Roadside Assistance and the Hirsches under the FLSA.

### b.  AMWA claim

The AMWA, like the FLSA, defines an "employee" as "any person who is or was employed by an employer." A.R.S. § 23-362(A). It defines an "employer" as "any corporation proprietorship, partnership, joint venture, limited liability company, trust, association, political subdivision of the state, individual or other entity acting directly or indirectly in the interest of an employer in relation to an employee." A.R.S. § 23-362(B).[6] To determine whether a worker is an employee under the AMWA as opposed to an independent contractor, the AMWA instructs courts to look "to the standards of the federal [FLSA]." A.R.S. § 23-362(D). Unlike the FLSA, the AMWA places the "burden of proof . . . upon the party for whom the work is performed to show independent contractor status by clear and convincing evidence." *Id.* A.R.S. § 23-362(D) mandates the same result reached under the FLSA. Thus, Hetland was an employee under the AMWA.

### c.  Summary

Hetland is an employee, as opposed to an independent contractor, under both the statutory definitions of the FLSA and the AMWA. 29 U.S.C. § 203(e)(1); A.R.S. § 23-362(A). Accordingly, he is entitled to statutorily guaranteed minimum and overtime wages. Hetland has alleged that the Hirsches failed to pay his guaranteed minimum and overtimes wages. (Doc. 1 ¶ 5–6.) Those allegations are to be taken as true. *NewGen LLC v. Safe Cig LLC*, 840 F.3d 606, 617 (9th Cir. 2016). Hetland, therefore, "has stated a claim on which [he] may recover." *Vietnam Reform Party*, 416 F. Supp. 3d at 962.

---

[6] As with the FLSA's definitions of employer and employee, there are exceptions to the AMWA's definition. However, none apply to these facts.

///

### 3. The fourth *Eitel* factor

Under the fourth *Eitel* factor, the Court considers the amount of money at stake in relation to the seriousness of the defendants' conduct. *See PepsiCo, Inc.*, 238 F. Supp. 2d at 1176. If the sum of money at stake is completely disproportionate or inappropriate, default judgment is disfavored. *See Streeter*, 438 F. Supp. 2d at 1071. In contrast to a complaint's other allegations, allegations pertaining to damages are not taken as true when considering a motion for default judgment. *See Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). A district court has "wide latitude" in determining the amount of damages to award upon default judgment. *James v. Frame*, 6 F.3d 307, 310 (9th Cir. 1993).

Here, Hetland seeks the unpaid minimum and overtime wages he is owed under the FLSA and AMWA, along with liquidated damages. Under the FLSA, Hetland concludes that he is owed $8,229.20 in overtime wages and liquidated damages in an equal amount pursuant to 29 U.S.C. § 216(b), all totaling $16,598.40. (Doc. 11 at 5.) Under the AMWA, Hetland seeks $5,203.80 in minimum wages and liquidated damages in a doubled amount, pursuant to A.R.S. § 23-364(G), all totaling $15,611.40. (*Id.* at 4–5.) In sum, Hetland requests $32,209.80 in damages, "exclusive of attorneys' fees and costs, which both the FLSA and AMWA require." (*Id.* at 5.)

The Court finds that the stated damages are not disproportionate or inappropriate. Because six of the seven *Eitel* factors discussed weigh in favor of Hetland, he is entitled to default judgment on his claim for unpaid overtime and minimum wages under the FLSA and AMWA. *Tolano v. El Rio Bakery*, No. CV-18-00125-TUC-RM, 2019 WL 6464748, at *2–6 (D. Ariz. Dec. 2, 2019) (similarly granting default judgment where each *Eitel* factor, except for the seventh, supported doing so).

### 4. Damages

Having found that entry of default judgment is proper, the Court must address damages. 29 U.S.C. § 216(b) defines the damages to be awarded in a failure to pay overtime wages under the FLSA. Under the FLSA, the employee is entitled to "unpaid overtime

compensation . . . and in an additional equal amount as liquidated damages . . . [including] a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). Likewise, A.R.S. § 23-364(G) sets out the damages to be awarded in a failure to pay minimum wages under the AMWA. Under the AMWA, the employee is entitled to "the balance of the wages . . . including interest thereon, and an additional amount equal to twice the underpaid wages . . . . A prevailing plaintiff shall be entitled to reasonable attorney's fees and costs of suit." A.R.S. § 23-364(G).

"To recover damages after securing a default judgment, a plaintiff must prove the relief [he] seek[s] through testimony or written affidavit." *Yelp, Inc. v. Catron*, 70 F.Supp.2d 1082, 1100–01 (N.D. Cal. 2014). Here, Hetland submitted a sworn affidavit demonstrating his paid wages for hours worked. (Doc. 11-1.) Hetland calculated that he worked at least 70 hours per week (an assertion supported by an attached email from Outlaw Roadside Service in Doc. 11-1 at 7) at a rate of $10.41 per hour. (Doc. 11-1 ¶ 12.) This rate, as Hetland pointed out, "is $1.59 below the 2020 Arizona minimum wage of $12 and $1.74 below the 2021 Arizona Minimum Wage of $12.15." (*Id.*) A.R.S. § 23-363(A)(4) and (B). Hetland worked thirty-eight weeks in 2020 and eight weeks in 2021. (*Id.* ¶ 13.) Accordingly, Hetland is owed $4,299.40 in unpaid minimum wages from 2020[7] and $974.40 in unpaid minimum wages from 2021.[8] (*Id.* ¶ 14–15.) These numbers add to $5,203.80, which must then be tripled pursuant to A.R.S. § 23-364(G), totaling $15,611.40. (*Id.* ¶ 16–18.)

Hetland is further entitled to unpaid overtime equaling $6 per hour for each hour worked in excess of 40 hours per week for the 38 weeks he worked in 2020. Similarly, he is entitled to unpaid overtime equaling $6.08 per hour for each hour worked in excess of 40 hours per week for the 8 weeks he worked in 2021. (Doc. 11-1 ¶ 19.) Hetland is thus

---

[7] This number was calculated by multiplying $1.59 (Hetland's unpaid minimum wage in 2020) by 70 (Hetland's hours worked per week) and multiplying the resultant number by 38 (the number of weeks Hetland worked in 2020).
[8] This number was calculated by multiplying $1.74 (Hetland's unpaid minimum wage in 2021) by 70 (Hetland's hours worked per week) and multiplying the resultant number by 8 (the number of weeks Hetland worked in 2021).

- 10 -

owed $6,840 in unpaid overtime wages for 2020[9] and $1,459.20 in unpaid overtime wages for 2021.[10] (*Id.* ¶ 20–21.) These numbers add to $8,299.20, which must then be doubled pursuant to 29 U.S.C. § 216(b), totaling $16,598.40. (*Id.* ¶ 22–24.) Combining the unpaid minimum and overtime wages, Hetland is entitled to $32,209.80, plus reasonable attorneys' fees and costs.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** granting Tobias Hetland's Motion for Default Judgment (Doc. 11).

**IT IS FURTHER ORDERED** awarding Tobias Hetland $32,209.80 plus reasonable attorneys' fees and costs and pre- and post-judgment interest at the applicable statutory rate in compensatory damages against the Hirsches, jointly and severally.

**IT IS FURTHER ORDERED** that Tobias Hetland shall have thirty days from the date of this Order to file a motion for attorneys' fees and costs that complies in all respects with LRCiv 54.2.

**IT IS FINALLY ORDERED** directing the Clerk of the Court to close this case and to enter judgment accordingly.

Dated this 4th day of March, 2022.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge

---

[9] This number was calculated by multiplying $6 (Hetland's unpaid overtime wage) by 30 (Hetland's hours worked in excess of 40 per week) and multiplying the resultant number by 38 (the number of weeks Hetland worked in 2020).

[10] This number was calculated by multiplying $6.08 (Hetland's unpaid overtime wage) by 30 (Hetland's hours worked in excess of 40 per week) and multiplying the resultant number by 8 (the number of weeks Hetland worked in 2021).